BANK OF McKENZIE v. H. F. MANLEY, et al.

Western Section.  June 30, 1931.

Petition for Certiorari denied by Supreme Court, January 23, 1932.

Maddox & Maddox, of Huntington, for appellant.
Harry E. Jones, of Dresden, for appellee.

SENTER, J. The original bill was filed in this cause by the complainant against H. F. Manley and wife and C. W. Fulghum and Horace Barksdale and L. E. Crawley, as defendants, to recover the amount of a note of $1752.80 against H. F. Manley and wife and C. W. Fulghum, and the further sum of $200 alleged to be due and owing as a balance on another note against C. W. Fulghum. The defendant, Barksdale, was made a party for the purpose of enforcing a vendor's lien against the tract of land sold by defendant Fulghum to Barksdale. L. E. Crawley was made a garnishee defendant, by which complainant sought to attach by garnishment a sufficient amount of the $5,000 note alleged to have been executed by defendant Crawley to defendant Fulghum, to satisfy the alleged indebtedness of Fulghum to the complainant. The bill alleged that said $5,000 note was executed by L. E. Crawley to C. W. Fulghum as the balance of the purchase price of a telephone plant at Bruceton, Tennessee, alleged to have been sold by C. W. Fulghum to L. E. Crawley.

An order pro confesso was taken against the defendants before the Clerk and Master on the motion of complainant's solicitor. Subsequently, the order pro confesso was set aside on motion of the defendants supported by an affidavit and the tender of a sworn answer. The action of the court in setting aside the order pro confesso against the original defendants and permitting them to file answers was excepted to by complainant, and the action of the court in setting aside the pro confesso and permitting the filing of answers is made the basis of certain of the assignments of error. At the

same term of the court at which the order pro confesso was set aside, Lula V. Kelly was permitted on her motion to become a party defendant and to file an answer and an intervening petition and cross-bill, by which she asserted ownership of the $5,000 note sought to be impounded and subjected to the alleged debt of C. W. Fulghum. To the action of the court in permitting Lula V. Kelly to be made a party defendant and to file said cross-bill, original complainant excepted, and this action is also made the basis of certain assignments of error.

At the hearing of the cause, upon the entire record, the Chancellor decreed a judgment against C. W. Fulghum, H. F. Manley and wife, Madge Manley, on the $1752.80 note sued on, and ordered a sale of the tract of land involved for the enforcement of said lien, and also decreed a judgment in favor of complainant against defendant C. W. Fulghum for the sum of $200 and interest, representing the balance on the $3,000 note executed by Fulghum to Bridges and owned by complainant.

The court dismissed complainant's bill insofar as it sought to attach and impound the $5,000 note executed by L. E. Crawley to C. W. Fulghum, and held and decreed that said note was the property of cross-complainant, Lula V. Kelly, and not the property of C. W. Fulghum, and sustained the cross-bill of Lula V. Kelly and discharged the attachment and dissolved the injunction with reference to said note and taxed the cost incident to said cross-bill to the original complainant.

The defendants to the original bill did not appeal from the decree and judgment of $1752.80, and $200, respectively, and the decree of sale of land for the enforcement of the lien. The complainant excepted to the decree of the Chancellor insofar as it denied any relief to complainant on the attachment of the $5,000 note, and from so much of the decree as sustained the cross-bill of Lula V. Kelly, and holding and decreeing that said Lula V. Kelly was the owner of said $5,000 note, and from this part of the decree the complainant, Bank of McKenzie, prayed and was granted an appeal to this court. The appeal has been perfected and errors assigned.

The first two assignments of error are directed to the action of the Chancellor in setting aside the order pro confesso as to the defendant, L. E. Crawley, and permitting him to file an answer in the cause; and to the action of the Chancellor in setting aside the order pro confesso against C. W. Fulghum.

Under these two assignments it is said that the motions to set aside the order pro confesso were not in writing and not supported by an affidavit. However, we find a stipulation in the record signed by the respective solicitors filed on May 28, 1931, by which it is stipulated that the certified copy of the affidavit of C. W. Fulghum

be considered by this court as a part of the transcript, which appears to have been inadvertently left out of the transcript. From this affidavit and the sworn answers tendered, we find no error in the action of the court in setting aside the orders pro confesso, and in permitting the defendants to answer the original bill. We will add that insofar as the relief for a judgment against the defendants Fulghum and Manley and wife, is concerned the court sustained the bill and decreed judgments as prayed for, and hence no harm resulted from setting aside the pro confesso and permitting the filing of an answer by C. W. Fulghum.

The third assignment is directed to the action of the court in permitting Lula V. Kelly to be made a party defendant on her motion and in allowing her to file an answer and cross-bill.

It appears that on the same day that the court set aside the orders pro confesso Lula V. Kelly who was not made a party to the original bill moved the court to be permitted to become a party to the suit, as a party defendant, and presented to the court her sworn answer and cross-bill to be filed against the Bank of McKenzie and L. E. Crawley. In this sworn answer and cross-bill, the movant, Lula V. Kelly, set up the facts that she was the true owner of the $5,000 note made by the defendant Crawley and payable to the defendant C. W. Fulghum; that she had furnished all the purchase money that went into the purchase and the subsequent improvement of the telephone plant at Bruceton, and that when the property was sold to L. E. Crawley she was not present in person at the time the sale was finally consummated, and at the time the bill of sale to the property was executed and at the time the $5,000 note representing the deferred payment, to be paid in monthly installments of $50 each, was executed by Crawley, and left with the Bank of McKenzie, with which bank she had been doing her entire banking business for many years, and that she supposed that the note had been made payable to her and not to C. W. Fulghum, who she claimed was her agent. She further set up the fact in her answer and cross-bill that the cash payment made by L. E. Crawley was received by the Cashier of the Bank of McKenzie, J. L. Thomason, and her bank account at said bank was credited with said cash payment, amounting to $1462.36, and that three payments made by Crawley on said note, one for the sum of $75.75, one for the sum of $75.50, and one for the sum of $75.25, were paid by checks made payable to her and delivered by Crawley to J. L. Thomason, cashier of the Bank of McKenzie, and duly credited on said $5,000 note, and her account was likewise credited with these payments, and that the Bank of McKenzie and J. L. Thomason knew and understood that she was the real owner of the Bruceton Telephone plant, and entitled to the proceeds of the sale.

Other allegations were made in the answer and cross-bill, which we think entitled her to intervene in the cause and to set up her claim of ownership to the $5,000 note which complainant had attached in the cause as the property of C. W. Fulghum. We find no error in the action of the Chancellor in permitting Lula V. Kelly to become a party defendant in the cause, and in permitting her to file an answer and cross-bill setting up her alleged rights to this $5,000 note.

The fourth and last assignment of error is directed toward the action of the court in sustaining the cross-bill of Lula V. Kelly, and in holding and decreeing that said $5,000 note attached, was the property of said Lula V. Kelly, and not the property of C. W. Fulghum, and in dismissing complainant's bill insofar as it sought relief against said $5,000 note, and in discharging the attachment levied thereon and dissolving the injunction issued against the defendants Fulghum and Crawley, and in taxing the cost incident to said cross-bill against original complainant.

This presents a question of fact, and the only question to be determined by this court on appeal, is as to the ownership of said $5,-000 note. It is, therefore, unnecessary to review any part of the record except that which pertains to the ownership of this $5,000 note.

It appears that many years ago Miss Lula V. Kelly, the cross-complainant, entered the service of the Cumberland Telephone Company, and later the Southern Bell Telephone Company, at McKenzie. At the time she was employed by the telephone companies at McKenzie she was associated with C. W. Fulghum, who was the district manger, and was under his direct supervision. She was with the telephone company for several years, and invested her salary above her living expenses in the purchase of telephone stock in the Bell Telephone Company, and in this way acquired 99 shares of stock. She sold this stock after she left McKenzie to go to Jackson where she continued in the employ of the Bell Telephone Company. During all this time she did her banking business with the Bank of McKenzie, and shortly before the purchase of the Bruceton Telephone Company she had a credit balance with the Bank of McKenzie of approximately $14,000 as the result of her savings. It appears that C. W. Fulghum, who had been for many years in the employ of the telephone company, was out of employment and learned of the telephone property at Bruceton, and communicated to Miss Kelly that this Bruceton telephone exchange and plant could be purchased. As a result she in company with C. W. Fulghum went to Bruceton and began to negotiate for the purchase of the Bruceton telephone plant from the owners, and after several weeks negotiation it resulted in the purchase of the plant. It also appears that the Bruceton plant was owned by defendant L. E. Crawley and a Mr. Mathis,

and the parties finally agreed on a price of $4,000, plus an outstanding indebtedness of about $334. The contract of sale was prepared by J. L. Thomason, cashier of the Bank of McKenzie. Miss Kelly was not present at the time this deal was closed. The bill of sale was made to C. W. Fulghum, and J. L. Thomason, cashier of the Bank of McKenzie, signed Lula V. Kelley's name to the checks amounting to $4,000, one for the sum of $2250 and one for the sum of $1750. C. W. Fulghum testified that because Miss Kelly was still employed by the Bell Telephone Company and held a responsible position at Jackson with that company and because the Bruceton telephone company was what is referred to in the record as a connecting line, although individually owned, and because of the further fact that Miss Kelly was the owner of the building in McKenzie where the McKenzie telephone exchange was located, and was renting said building to the Bell Telephone Company, that both he and Miss Kelly deemed it inexpedient that Miss Kelly appear as the owner and purchaser of the Bruceton plant, and for this reason the bill of sale was taken in the name of C. W. Fulghum. It also appears that Fulghum executed a trust deed to secure a $4500 note payable to Miss Kelly on the Bruceton plant, and that this instrument was prepared by J. L. Thomason, cashier of the Bank of McKenzie, and was delivered by Fulghum to Miss Kelly, with the explanation that since the bill of sale to the plant was made to him, although she was the owner and had paid all the purchase price, that he thought it proper for her protection that he execute the trust deed and note to her. This trust deed was not placed to record. It also appears that after the purchase of the plant, a verbal contract was entered into between Miss Kelly with L. E. Crawley and C. W. Fulghum for the operation of the plant at Bruceton, whereby Crawley was to be the lineman and other mechanical work, and his wife would operate the exchange board during the day and for which Crawley was to receive 50% of the net earnings, and the other 50% was to be divided between Fulghum and Miss Kelly, and Fulghum was to manage the plant and operate the switch board at night. After the plant had been in operation under this arrangement for about eleven months, it was apparent that a considerable additional amount of money would have to be spent for the extension and improvements to the plant. Miss Kelly had spent several hundred dollars in supplies and improvements since the purchase of the plant, and it was apparent that an additional amount of something like $2500 or $3000 would have to be invested in order to make the plant profitable. In this situation Miss Kelly decided that it was expedient to sell the plant, and L. E. Crawley made a proposition to purchase, and the plant was sold to him for a consideration of $7,000. The plant was then indebted to Crawley for something

over $500, and he paid in cash the difference amounting to $1464, making up the $2,000 cash payment. The $1464 cash was paid into the bank by check of L. E. Crawley payable to Lula V. Kelly, and was placed to her credit in the Bank of McKenzie by J. L. Thomason. She was not present in person when this sale was finally consummated. J. L. Thomason prepared the bill of sale or deed, which was executed by C. W. Fulghum, and upon suggestion of the attorney for Crawley, Crawley having personal knowledge that the trust deed had been executed by Fulghum to secure the $4500 note to Miss Kelly, it was deemed necessary that Miss Kelly also sign the bill of sale or conveyance, and the instrument was sent to her in Jackson, where she executed it. Crawley executed a note for $5,000 representing the deferred payment. This note was payable in monthly installments of $50 each with all accrued interest. At this point there is a considerable conflict in the evidence. The note is made payable to C. W. Fulghum, but was left with J. L. Thomason, cashier of the Bank of McKenzie, and was placed with the papers of Miss Kelly in said bank. Crawley testified that he understood that the plant belonged to Miss Kelly, and he thought that the note was made payable to her; that he did not read the note carefully and did not notice that it was made payable to Fulghum. Fulghum testified that he directed J. L. Thomason to make up 100 notes, each for the sum of $50, and one note to become due each month from date, with interest, payable to Lula V. Kelly, and did not know until the suit was brought in this cause that J. L. Thomason, the cashier of the Bank of McKenzie had drawn up only one note for $5,000, payable to C. W. Fulghum in monthly installments of $50 each. Miss Kelly testified that she did not know until the suit was brought that the note was made payable to C. W. Fulghum. Crawley also testified that when the first installment was due he inquired of J. L. Thomason, cashier of the Bank of McKenzie to whom he should make the check, and was advised by Thomason to make the check payable to Lula V. Kelly, and that he made each of the three checks payable to Lula V. Kelly, these checks representing the first three monthly installments with all interest added. Credits were entered on the note for these payments, and the amount of each check was credited to the account of Miss Kelly at the bank. J. L. Thomason denies that he received instructions from Fulghum to draw 100 notes of $50 each, payable to Miss Kelly. He denies that he knew that Miss Kelly was the owner of the plant. He testified that he knew of the existence of the trust deed, and he states that while Miss Kelly furnished the money to buy the plant that it was a loan from her to Fulghum secured by the trust deed. He also denies that Miss Kelly is the owner of the note in question.

The contention or theory of the bank is based upon the evidence of Thompson, and upon the fact that in the purchase of the Bruceton telephone plant, the bill of sale was taken in the name of Fulghum, and in the further fact that Fulghum executed the note and trust deed to Miss Kelly for $4500, and in the further fact that when the plant was sold to Crawley the $5,000 note representing the deferred payment was made payable to Fulghum, and in the further fact that Fulghum was in the active charge and management of the plant from the time it was purchased until it was sold to Crawley, and by the further fact that Fulghum was insolvent.

These facts and circumstances are entitled to considerable weight. However, Crawley testifies that he recognized Miss Kelly as the owner of the plant and the negotiations for the sale of the plant to her by Crawley and his partner and all propositions were submitted to Miss Kelly; that she frequently visited the plant at Bruceton on Sundays. He also testified that when he purchased the plant back the check for the cash payment was made to Miss Kelly by the direction of J. L. Thomason, cashier of the bank, and that in making the three payments on the $5,000 note he made the checks payable to Miss Kelly by direction of J. L. Thomason, cashier of the bank. He testified that he did not at the time he executed the $5000 note, observe that it was payable to Fulghum, but supposed that it was made payable to Miss Kelly. At the time Fulghum and Crawley went to McKenzie to close the deal for the sale of the plant, they went by Huntington and procured Mr. Maddox, an attorney, to go with them to McKenzie. Mr. Crawley testified that he wanted an attorney to be present and to have his services in closing the deal, but that Mr. Fulghum stated that he thought Mr. Thomason could prepare the necessary papers and close the transaction. Mr. Maddox was present, and we think it very probable that he approved the papers as prepared by Thomason, and that Crawley signed the note without reading it carefully because it had been approved by his attorney, Mr. Maddox, who was present and aided in closing the transaction. Mr. Fulghum testified that he was insolvent and was out of a position, and Miss Kelly had a considerable sum of money in the Bank of McKenzie and had expressed a willingness to help him and had suggested that since he was familiar with the telephone business that it would suit him better than any other line. He testified that upon learning that the telephone plant at Bruceton could be bought, he communicated the fact to Miss Kelly and advised her that he thought it was a good investment, and that it was susceptible of profitable development, and she became interested and they together called upon the owners of the plant at Bruceton and began the negotiations for the purchase of the plant. He testified that because of her connection with the Bell Telephone Company, and

because the Bruceton plant was a connecting line, that it would not be expedient for the plant to be bought in her name, and it was agreed between them that she would pay for the plant, and would furnish the necessary money for supplies and that it would be operated under his management, and that the plant was bought by her and the bill of sale taken in his name for the reasons stated. He also testified that it was his suggestion that he execute the trust deed and note to her to protect her in the event anything should happen to him, and that he had the note and trust deed prepared and delivered same to her, and that this was done at his own suggestion and without any request from her whatever, and that he explained to her why he had executed the note and trust deed. He stated that he never at any time had any interest in the plant other than a working interest, and was not entitled to receive any part of the profits realized from a resale of the plant. He further testified that Crawley under the arrangement was to receive 50% for his services and the services of his wife of the net earnings, and that the other 50% would be divided between himself and Miss Kelly. He stated that he paid his personal expenses out of his part of the 50% and the small amount of net earnings going to Miss Kelly was used in the purchase of supplies for the plant, and that when any overdrafts occurred in the bank account of the telephone company, he directed the bank cashier at Bruceton to draw on Miss Kelly, and that this was done. He testified very emphatically as to his directions to Mr. Thomason in the matter of preparing 100 notes of $50 each, one payable each month from date, and that the notes were to be made payable to Miss Kelly.

Miss Kelly testified that she was the purchaser of the plant, and the facts and circumstances under which she made the purchase. She paid all the purchase price, and was not present when the sale was consummated, and did not personally authorize J. L. Thomason to sign her name to the two checks, one for $2250 and one for $1750, representing the cash payment which she made, but that Fulghum had been authorized to have Mr. Thomason sign the checks. She testified that she expected to develop the plant and receive a profit in a resale of it, and in the meantime furnish Mr. Fulghum employment. Mr. Fulghum had been her friend for many years and was in a position of authority over her during the time he was connected with the Bell Telephone Company, and had no doubt befriended her when she needed help by advancing and promoting her in the employment of the Bell Telephone Company. She also explains that because of the circumstances of her employment that she deemed it best that the bill of sale be made in the name of Fulghum, who she regarded as her agent, and that her name be not known in the transaction. She also testified that she sold the property to Craw-

ley, and that she received from Crawley the cash payment, by having the same credited to her bank account with the Bank of McKenzie. She testified that she supposed the $5,000 note representing the balance was made payable to her, and did not know any better until this suit was brought. She knew that the payments made by Crawley on this note had been placed to her credit at the Bank of McKenzie, by J. L. Thomason, the cashier. It is evident that she had implicit confidence in J. L. Thomason, and all her banking business was done with his bank, even after she left McKenzie and moved to Jackson. She kept large sums of money on deposit at this bank.

We are of the opinion that other facts and circumstances in the record strongly corroborate the contention of appellee that she was the owner and sole owner of the Bruceton telephone plant, and that she was the true and rightful owner of the $5,000 note in question. We are further of the opinion that the Chancellor correctly found that by a preponderance of the evidence appellee was the true and lawful owner of the $5,000 note, and entitled to have her cross-bill sustained. The Chancellor has filed a finding of the facts as found by him, which is contained in the record, and in which we fully concur.

It results that all assignments of error are overruled, and the decree of the Chancellor is affirmed. The cost of this appeal will be paid by appellant and surety on the appeal bond.

Heiskell and Owen, JJ., concur.